IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

Persaud Companies, Inc.          )
                                 )
        Plaintiff,               )
                                 )
        v.                       )        Case No. 1:09cv94(GBL)
                                 )
The IBCS Group, Inc.,            )
Edmund Scarborough, and          )
Steven Golia,                    )
                                 )
        Defendants.              )

## MEMORANDUM OPINION

THIS MATTER is before the Court on Plaintiff's and
Defendants' Cross Motions for Summary Judgment.  This case
concerns Plaintiff Persaud Companies, Inc.'s ("Persaud")
allegations that Defendant IBCS Group, Inc. ("IBCS") falsely
represented its refund policy to induce Persaud into purchasing
its bonds and that IBCS, along with Defendants Edmund
Scarborough and Steven Golia, falsely advertised IBCS's refund
policy with the intent to induce the public into purchasing IBCS
bonds.  There are three issues before the Court.  The first
issue is whether IBCS materially misrepresented its refund
policy to procure a contract with Persaud, such that Persaud
relied on the misrepresentations and was induced by them to
enter into the contract.  The second issue is whether IBCS's

1

marketing brochure constitutes false advertising in violation of sections 18.2-216 of the Virginia Code. The third issue is whether Defendants acted with reckless disregard in procuring IBCS's contract with Persaud.

The Court grants summary judgment in favor of Persaud on Count I (fraud in the inducement) because there are no genuine issues of material fact as to whether IBCS misrepresented its refund policy to Persaud to secure the General Indemnity Agreement and bond premium. The Court also grants summary judgment in favor of Persaud on Count III (false advertising) because there are no genuine issues of material fact as to whether IBCS, by disseminating its marketing brochure, violated Virginia's false advertising statute. Finally, the Court grants summary judgement in favor of Defendants on Count IV (punitive damages) because Defendants' misrepresentations concerning IBCS's refund policy, without more, are insufficient to create a genuine issue for trial as to whether Defendants' acted with actual malice.

## I.   BACKGROUND

Persaud Companies, Inc. is a construction contracting company that sought surety bonds from IBCS Group, Inc., a bonding company. (Andy Persaud Decl. ¶ 3.) Persaud wanted bonds to guarantee a subcontract from general contractor JACO &

2

MCC Joint Venture LLP ("JMJV"). (Andy Persaud Decl. ¶¶ 7,9.)
Mr. Edmund Scarborough is in the business of acting as an
individual surety and is the owner of IBCS. He provides payment
and performance bonds to general contractors and subcontractors.
(Scarborough Dep. 12:1-12, 24:14-17, Oct. 7, 2009.) Mr. Steven
Golia is an Executive Vice President of IBCS. (Golia Dep.
60:21-61:5, Oct. 6, 2009.) Mr. Mark Congdon is Persaud's
bonding agent. (Andy Persaud Dep. 46:3-9, Nov. 5, 2009; Persaud
Admis. to IBCS 66.)

Beginning in November 2008, Persaud and IBCS engaged in
discussions concerning the bonds Persaud needed to secure its
contract with JMJV to construct a Texas border fence. (Andy
Persaud Decl. ¶¶ 5, 6.) On November 17, 2009, Mr. Congdon
emailed Mr. Golia about IBCS's refund policy in case JMJV
rejected the bonds. (Andy Persaud Decl. ¶ 16; Congdon Dep.
31:17-32:7, Nov. 6, 2009.) Mr. Golia responded by directing Mr.
Congdon to IBCS's marketing brochure, then available on its
website, which stated in relevant part:

> *Q. What happens if a bond is rejected by an obligee?*
> A. We intend to pre-qualify all bonding requests
> to minimize the possibility of bond rejection.
> However, we will reverse a transaction if a
> bond is promptly rejected.

(Brochure, Am. Compl. Ex. A.) Mr. Golia also told Mr. Congdon
that Persaud could get a refund within fifteen days if JMJV

3

rejected the bonds, and encouraged Mr. Congdon to get the bonds pre-approved by JMJV. (Defs.' Mem. Opp'n Summ. J. Ex. 3.)

On December 29, 2008, Persaud and IBCS entered into a General Agreement of Indemnity ("GAI") which governed the parties' relationship concerning the bonds. (Andy Persaud Decl. ¶ 20; IBCS Admis. 24; Golia Dep. 219:18-20, Oct. 6, 2009.) The GAI contained a "FEES AND CHARGES" provision which stated that the "full initial fee is fully earned upon execution of the BOND and will not be refunded, waived or cancelled for any reason." (GAI, Am. Compl. Ex. F.) Before Persaud paid the bond premium, Mr. Congdon again emailed Mr. Golia in January 2009 about IBCS's refund policy, to which Mr. Golia again directed Mr. Congdon to the marketing brochure and suggested that Persaud get the bonds pre-approved by JMJV. (Andy Persaud Decl. Ex. H at ¶ 22; Golia Admis. 20-22; IBCS Admis. 15.) In fact, Persaud never got the bonds pre-approved. (Defs.' Mem. Supp. Summ. J. 7.)

Shortly after entering into the GAI, Persaud paid a bond premium of $121,557 and IBCS issued the bonds. (Golia Dep. 226:8-11, Oct. 6, 2009.) However, on January 12, 2009, JMJV rejected the bonds because they came from an individual surety instead of a corporate surety. (Golia Dep. 101:4-9, Oct. 6, 2009.) JMJV's email to Persaud stated in relevant part:

> The purpose of this letter is to express [our] concern that the bonds are issued by an individual

4

surety versus the standard Corporate Surety
Company. Therefore, [we], by this letter, [are]
rejecting these bonds, forwarding the originals
back to Persaud Companies, Inc., will be issuing
a negative change order for the bond premium,
and subsequently issuing joint checks to Persaud
Companies Inc. and its second tier
subcontractors/suppliers.

(Pl.'s Mem. Supp. Summ. J. Ex. L.) Upon notice, IBCS reissued

the bonds on forms provided by JMJV, but again, JMJV rejected

them on January 19, 2009. (Answer ¶ 20.) Subsequently, JMJV

withdrew its demand for the bonds and reduced the size of

Persaud's contract by an amount equal to the bond premium,

thereby allowing Persaud to proceed under the subcontract.

(Defs.' Mem. Supp. Summ. J. 14, 15.) Within twenty-four hours

of receiving JMJV's rejection, Persaud notified IBCS, emailed

IBCS a copy of JMJV's rejection letter, and requested a full

refund of the bond premium. (Andy Persaud Decl. Ex. M at ¶ 29;

Golia Admis. 35-43; Golia Dep. 230:8-14, Oct. 6, 2009.)

However, in his reply email, Mr. Golia wrote, "as stated in the

General Indemnity Agreement, no refund is due." (Pl.'s Mem.

Supp. Summ. J. Ex. N.)

Unable to reclaim its bond premium, Persaud filed suit

against IBCS, Mr. Scarborough and Mr. Golia alleging the

following five counts: Count I (fraud in the inducement against

IBCS); Count II (fraud against IBCS, Edmund Scarborough, and

5

Steven Golia); Count III (false advertising against IBCS, Edmund Scarborough, and Steven Golia); Count IV (punitive damages against IBCS, Edmund Scarborough, and Steven Golia); and Count V (unfair competition against IBCS, Edmund Scarborough, and Steven Golia). Defendants then filed a Motion to Strike, Motion to Dismiss, and Motion for a More Definite Statement. After hearing oral arguments from all parties, the Court denied Defendants Motion to Strike, Motion to Dismiss, and Motion for a More Definite Statement as to Counts I, III and IV, and granted Defendants' Motion to Dismiss as to Counts II and V. The parties now file cross Motions for Summary Judgment on Counts I, III and IV.

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, the Court must grant summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 586-87 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48.

A "material fact" is a fact that might affect the outcome of a party's case. *Id.* at 248; *JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248; *Hooven-Lewis v. Caldera*, 249 F.3d 259, 265 (4th Cir. 2001). A "genuine" issue concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. *Anderson*, 477 U.S. at 248. Rule 56(e) requires the nonmoving party to go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

## III. ANALYSIS

### A. Count I (fraud in the inducement)

The Court grants summary judgment in favor of Persaud on
Count I because there are no genuine issues of material fact as
to whether IBCS misrepresented its refund policy to Persaud in
order to secure the GAI and bond premium. To prevail on a fraud
in the inducement claim a plaintiff must prove (1) that the
defendant made a material misrepresentation for the purpose of
procuring a contract, (2) the plaintiff relied on the
misrepresentation and (3) was induced by it to enter into the
contract, and (4) the plaintiff suffered damage as a result.
*Brame v. Guarantee Finance Co., Inc., et al.*, 124 S.E. 477, 481
(Va. 1924). The Court addresses each of the four elements in
turn.

### 1. *Material misrepresentation*

IBCS materially misrepresented its refund policy based on
the information supplied by its marketing brochure and Mr.
Golia's representations. A misrepresentation is "material when
it influences a person to enter into a contract, when it
deceives him to act, or when without it the transaction would
not have occurred." *J.E.Robert Co. v. J.Robert Co.*, 343 S.E.2d
350, 355 (Va. 1986) (quoting *Packard Norfolk v. Miller*, 95
S.E.2d 207, 211-12 (Va. 1956)(citation omitted))(finding the car

8

dealer's statements regarding its automobile material because they substantially affected the buyer's interest in purchasing the automobile).

Here, there is no factual dispute as to whether IBCS made a material misrepresentation because both the marketing brochure and Mr. Golia's representations were contrary to the GAI—the true embodiment of IBCS's refund policy—and influential in Persaud's decision to pay the bond premium. On its face, IBCS's marketing brochure expressly stated, "we will reverse a transaction if a bond is promptly rejected." (Brochure, Am. Compl. Ex. A.) Moreover, each time Mr. Congdon inquired about IBCS's refund policy, Mr. Golia directed him to the marketing brochure. (Pl.'s Mem. Supp. Summ. J. ¶ 26; Defs.' Mem. Opp'n Summ. J. at 2; Andy Persaud Decl. Ex. H at ¶ 22; Golia Admis. 20-22; IBCS Admis. 15.) While encouraging Persaud to get the bonds pre-approved, Mr. Golia also promised Mr. Congdon that IBCS would provide a refund within fifteen days if JMJV rejected the bonds. (Defs.' Mem. Opp'n Summ. J. at 2, 3.) In contrast, the GAI's "FEES and CHARGES" provision states unequivocally, "the full initial fee is fully earned upon execution of the BOND and will not be refunded, waived or cancelled for any reason." (GAI, Am. Compl., Ex. F.) At no time during their discussions and email correspondence did Mr. Golia disclose to Mr. Congdon

9

that the GAI governed IBCS's refund policy. (Congdon Dep. 95:14-96:7, Nov. 6, 2009.) Yet when Persaud sought a refund of its bond premium, IBCS denied the request based on the "FEES and CHARGES" provision, which contradicts both the marketing brochure's express language and Mr. Golia's representations. (Pl.'s Mem. Supp. Summ. J. Ex. N.)

Under the circumstances, Mr. Golia's oral and written representations influenced Persaud's decision to enter into the GAI and pay the bond premium. Mr. Congdon inquired about IBCS's refund policy on more than one occasion. Concerned with JMJV's possible rejection of the bonds, Mr. Congdon emailed Mr. Golia in November 2008 about the likelihood of receiving a full refund. (Andy Persaud Decl. ¶ 16; Congdon Dep. 31:17-32:7, Nov. 6, 2009.) Less than two months later, Mr. Congdon made the same inquiry. (Andy Persaud Decl. Ex. H at ¶ 22; Golia Admis. 20-22; IBCS Admis. 15.) Only after receiving assurances from Mr. Golia, on both occasions, that a full refund would be provided with prompt notice did Persaud enter into the GAI and pay the bond premium. (Defs.' Mem. Opp'n Summ. J. Ex. 3; Andy Persaud Decl. ¶ 20; IBCS Admis. 24; Golia Dep. 101:4-9, 219:18-20, Oct. 6, 2009.) Thus, at the very least, Mr. Congdon's repeated inquiries indicate the materiality of Mr. Golia's misrepresentations concerning IBCS's refund policy.

2. *Reliance*

Persaud's reliance on the marketing brochure and Mr.
Golia's representations was both reasonable and justifiable.
A basic tenet of fraud is that the misrepresentation was relied
on by the party to whom it was addressed. The reliance,
however, must be both reasonable and justified. *See White v.
Potocska*, 589 F.Supp.2d 631, 652 (E.D. Va. 2008) (holding that
reliance is unreasonable if the party "had enough information to
excite his suspicions, and he was therefore under a duty to
ascertain the true condition for himself.") Where reasonable
reliance requires looking to what a prudent person would do
under the circumstances, justifiable reliance does not require
that a person conform his conduct to the standard of the
reasonable man. *Field v. Mans*, 516 U.S. 59, 63, 71 (1995).
Simply put, justifiable reliance is less demanding than
reasonable reliance because it is "a matter of the qualities and
characteristics of the particular plaintiff, and the
circumstances of the particular case, rather than of the
application of a community standard of conduct . . . " *Id.* at
71 (citation omitted).

On these facts, Persaud's reliance on IBCS's
misrepresentations was both reasonable and justified even in
light of the GAI. Relying on *Potocska*, 589 F.Supp.2d at 650,

11

and *Scheduled Airlines Traffic Offices, Inc. v. Objective, Inc.*,
180 F.3d 583, 589 (4th Cir. 1999), IBCS faults Persaud for
failing to discover the GAI's contradictory language. (Defs.'
Mem. Supp. Summ. J. 11, 12.)  The facts of *Potocska* and
*Objective*, however, do not parallel the facts of this case.  In
contrast to *Potocska*, where defendants alleged plaintiffs
fraudulently misrepresented certain documents in the sale of a
financial services firm after months of negotiation in which
both parties were involved in drafting specific exhibits, there
was insufficient information here to arouse Persaud's suspicion
concerning IBCS's true refund policy.  589 F.Supp.2d at 639.
IBCS alone drafted the marketing brochure and GAI.  (Brochure,
GAI, Am. Compl. Ex. A, F.)  Although Persaud had access and
possession of the GAI beginning on December 29, 2008, Mr. Golia
actively misdirected Mr. Congdon to the marketing brochure and
made contradictory statements beginning in early November 2008
and even after the parties entered into the GAI.  (Andy Persaud
Decl. Ex. H at ¶ 22; Golia Admis. 20-22; IBCS Admis. 15.)

     In *Objective*, defendant software development firm agreed to
produce a travel software system for plaintiff but failed to
complete the task when problems made the software inoperable.
180 F.3d 583.  Confronted with a breach of contract and breach
of warranty complaint, defendant counterclaimed for fraud and

argued that it was induced to enter into a low fee contract based on guarantees of exposure and visibility. *Id.* at 589. There, the court deemed plaintiff's statements as mere expressions of opinion about what defendant could gain from the parties' agreement. *Id.* In contrast, the statements contained in IBCS's marketing brochure and Mr. Golia's emails were not opinions but assurances that Persaud would issue a full refund if prompt notice of JMJV's rejection is provided. (Defs.' Mem. Opp'n Summ. J. Ex. 3; Andy Persaud Decl. Ex. H at ¶ 22; Golia Admis. 20-22; IBCS Admis. 15.) In further contrast, the Fourth Circuit found that the plaintiff in *Potocska* made "no misrepresentation of a material fact . . ." *Id.* Whereas here, we cannot deny that IBCS materially misrepresented its refund policy. Mr. Congdon's written and oral inquiries were repeatedly met with the same response—to look to IBCS's marketing brochure and if notice of a rejection is given within fifteen days, IBCS would refund the bond premium. (Defs.' Mem. Opp'n Summ. J. at 2, 3; Andy Persaud Decl. Ex. H at ¶ 22; Golia Admis. 20-22; IBCS Admis. 15.) Persaud had no reason to doubt, based on Mr. Golia's assurances that IBCS, a decade old company dealing with clients engaging in contracts with the Department of Defense, would publish a marketing brochure or make representations containing false information regarding its

13

services. Thus, Persaud could therefore reasonably and justifiably rely on all that Mr. Congdon's inquiries revealed.

IBCS contends that Persaud's reliance was unreasonable for three reasons. First, Persaud failed to protect itself by getting the bonds pre-approved as IBCS suggested. (Defs.' Mem. Supp. Summ. J. at 5-7; Defs.' Mem. Opp'n Summ. J. at 6, 7.) Second, because JMJV not only rejected the bonds but also *waived* the bond requirement, thereby allowing Persaud to proceed under the subcontract, the circumstance was one which neither party anticipated, and contrary to the marketing brochure's language. (Defs.' Mem. Supp. Summ. J. 13, 14.) The brochure only stated that IBCS would reverse a transaction if a bond is promptly rejected, not when there is a waiver of the bond requirement. (Brochure, Am. Compl. ¶ 13, Ex. A.) Consequently, Persaud could not rely on representations concerning a situation which neither party considered or discussed, and was not stated in the marketing brochure. Finally, Persaud should have made specific inquiries regarding the inconsistencies between its claimed understanding of the alleged representations and the GAI's express terms. (Defs.' Mem. Supp. Summ. J. 11, 12.)

The Court is unpersuaded by IBCS's arguments. First, based on the marketing brochure's language, pre-qualification was not a condition precedent to receiving a refund of the bond premium.

14

"We intend to pre-qualify all bonding requests to minimize the
possibility of bond rejection," is language of intent, not
requirement. (Brochure, Am. Compl. Ex. A.) A literal reading
of the marketing brochure indicated that IBCS, not Persaud,
would pre-qualify the bonds. However, IBCS took no action to
satisfy its obligation and instead encouraged Persaud to pre-
qualify the bonds. (Defs.' Mem. Opp'n Summ. J. at 2-5; Golia
Admis. 20-22; IBCS Admis. 15.) Second, JMJV's decision to waive
the bond requirement did not change the fact that it first
rejected the bonds issued by IBCS. (Pl.'s Mem. for Summ. J.,
Ex. L.) By its January 19, 2009 letter to Persaud, JMJV
unequivocally stated, "[we are] rejecting these bonds,
forwarding the originals back to Persaud . . . and subsequently
issuing joint checks to Persaud Companies Inc. and its second
tier subcontractors/suppliers." (Pl.'s Mem. for Summ. J., Ex.
L.) Any decision thereafter to waive the bond requirement was a
separate act from JMJV's earlier rejection. Whether Persaud
relied on representations concerning an unanticipated event—
JMJV's waiver of the bond requirement—is irrelevant.

Finally, IBCS cannot use Persaud's negligence as an excuse
where IBCS's misrepresentations diverted Persaud from
discovering that it would not receive a refund. *See Nationwide
Ins. Co. v. Patterson*, 331 S.E.2d 490, 492 (Va. 1985)

(concluding that when a party fraudulently induces another to enter into a contract, he cannot then "escape liability by saying that the party to whom the misrepresentation was made was negligent in failing to learn the truth"); *see also Cerriglio v. Pettit*, 75 S.E. 303, 308 (Va. 1912) (finding that one cannot defend an action for fraud by saying, "'[i]t is true that I, by fraud and deceit, induced you to enter into the contract, but you were negligent in not finding out that I was deceiving you, and, therefore, guilty of negligence in believing me'" (citation omitted)). At the time of its representations, IBCS knew, as the drafting party, that while the marketing brochure stated a full refund of the bond premium would be available, no such refund was due under the GAI's terms. Nonetheless, Mr. Golia continued to direct Mr. Congdon to the marketing brochure every time the latter raised a question about IBCS's refund policy. (Pl.'s Mem. for Summ. J. ¶ 33; Andy Persaud Decl. Ex. H at ¶ 22; Golia Admis. 20-22; IBCS Admis. 15.) Mr. Golia did not simply conceal the GAI's terms from Mr. Congdon but actively misdirected Mr. Congdon into believing that a full refund would be available upon timely notice of JMJV's rejection. As such, Persaud's failure to discover the inconsistencies between IBCS's representations and the GAI's terms is not a defense to reliance.

16

3. *Inducement*

   The marketing brochure and Mr. Golia's representations
induced Persaud to enter into the GAI and pay the bond premium.
Misrepresentations under a fraud in the inducement claim must be
made with the intent to induce formation of the contract.
*Brame*, 124 S.E. at 481. Admittedly, IBCS used the marketing
brochure as a marketing tool to attract those seeking surety
bonds. (Golia Dep. 134:2-135:8, Oct. 6, 2009.) The brochure's
plain language, without qualification, led Persaud to sign the
GAI on belief that a full refund would be provided if JMJV
rejected IBCS's bonds. (Brochure, Am. Compl. ¶ 13, Ex. A.)
IBCS knew its refund policy was not embodied in the Brochure or
in Mr. Golia's representations but rather in the GAI's "FEES AND
CHARGES" provision. (Golia Dep. 138:9-139:20, 163:21-164:1,
188:15-189:1, Oct. 6, 2009; Scarborough Dep. 24:18-25:13, Oct.
7, 2009.) Nonetheless, IBCS disseminated the marketing brochure
and Mr. Golia repeatedly assured Mr. Congdon that a refund would
be available if JMJV rejected the bonds and timely notice is
given. (Golia Dep. 143:2-19, Oct. 6, 2009; Congdon Dep. 95:14-
96:7, November 6, 2009; Andy Persaud Decl. ¶ 18.) Thus, IBCS
knowingly misrepresented its refund policy in order to procure
the GAI with Persaud and the bond premium.

17

But for IBCS's misrepresentations, Persaud would not have entered into the GAI and paid the bond premium. Before signing the GAI, Mr. Congdon made numerous oral and written inquiries regarding IBCS's refund policy and at all times he was directed to the marketing brochure. (Pl.'s Mem. for Summ. J. ¶ 33; Ex. H to A. Persaud Decl. ¶ 22; Golia Admis. 20-22; IBCS Admis. 15.) Additionally, Mr. Golia's statements indicating that there was a fifteen day review period and a refund would be given if the bonds were rejected within that time provided further incentive for Persaud to pay the bond premium. (Andy Persaud Decl. Ex. E. at ¶ 17; IBCS Admis. 17, 18; Golia Admis. 24, 25.)

IBCS argues that pressure from JMJV forced Persaud to purchase the bonds rather than any act of inducement by IBCS; therefore, the marketing brochure and Mr. Golia's representations had no effect on Persaud's decision to purchase the bonds. (Defs.' Mem. Opp'n Summ. J. at 15-20.) However, whether Persaud faced pressure from JMJV or struggled to obtain the bonds from other bonding companies is irrelevant to IBCS's misrepresentation of its refund policy. As an unrelated third party to the IBCS-Persaud contractual relationship, JMJV's actions had no bearing on IBCS's true intention regarding its refund policy under the GAI. Similarly, Persaud's ability to secure bonds from other sureties is independent from IBCS's

18

misrepresentations. Therefore, IBCS cannot avoid responsibility on the ground that Persaud was compelled to contract because of circumstances on which IBCS had no control.

4. *Damages*

Persaud's reliance on IBCS's marketing brochure and Mr. Golia's misrepresentations resulted in the loss of the bond premium. Shortly after entering into the GAI, Persaud paid the bond premium. (Answer ¶ 18; Golia Dep. Tr. 226:8-11.) Within hours of receiving JMJV's rejection, Persaud notified IBCS, emailed IBCS a copy of JMJV's rejection letter, and requested a full refund of the bond premium. (Andy Persaud Decl. Ex. M at ¶ 29; Answer ¶¶ 26, 27; Golia Admis. 35-41; Golia Dep. 230:8-14, Oct. 6, 2009.) However, IBCS refused to issue a refund, thereby causing Persaud to suffer financial loss in the amount of $121,557, the value of the bond premium. (Andy Persaud Decl. Ex. N at ¶ 31; Answer ¶ 31; Golia Dep. 232:19-233:19, Oct. 6, 2009.)

## B. Count III (false advertising)

The Court grants summary judgment in favor of Persaud on Count III because there are no genuine issues of material fact as to whether IBCS, by disseminating a brochure which contained a false statement regarding its refund policy, violated Virginia's false advertising statute. It is a misdemeanor for a

19

person or company who intends to sell or distribute any product or service to make or distribute any written advertisement regarding that product, which contains false or misleading statements intended to persuade the public to enter into an obligation. VA. CODE ANN. §§ 18.2-216 (West 2009); *Henry v. R.K. Chevrolet, Inc.*, 254 S.E.2d 66, 67 (Va. 1979)(affirming the trial court's decision that defendant's oral representations did not violate §§ 18.2-216 because Congress intended the statute to cover only non-oral advertisements). Although punishable as a misdemeanor, a violation of §§ 18.2-216 also "subjects the defendant to an action for damages by any person who suffers loss as a result of such violation." VA. CODE ANN. §§ 59.1-68.3; *Henry*, 254 S.E.2d at 67. In dispute is whether the marketing brochure contained misleading statements which IBCS intended to induce the public into purchasing its bonds.

1. *Misleading Statement*

The marketing brochure and Mr. Golia's emails contained misleading statements regarding IBCS's refund policy. Like other forms of advertisement, the marketing brochure was a marketing tool which IBCS used to promote its surety services. (Golia Dep. 134:2-19, Oct. 6, 2009; Andy Persaud Decl. Ex. C at ¶¶ 12, 13; Brochure, Am. Compl. Ex. A.) By posting the marketing brochure on its website, any member of the public

20

could obtain information about IBCS's services simply by accessing the World Wide Web to view the brochure. (Golia Dep. 138:13, 134:2-19, Oct. 6, 2009.) Based on its language, a party that wishes to purchase surety bonds and reads the brochure would understand that he may receive a refund if timely notice of a rejection is given. (Brochure, Am. Compl. ¶ 13, Ex. A.) However, that was not the case as IBCS admitted the marketing brochure did not contain a complete statement of its refund policy. (Golia Dep. 138:9-139:20, Oct. 6, 2009.) Rather, the GAI, which expressly forbids refunds for any reason, is the true embodiment of IBCS's refund policy. (GAI, Am. Compl., Ex. F.) In sum, the marketing brochure was not only an incomplete statement, but a false statement of IBCS's refund policy such that IBCS will not reverse a transaction if a bond is promptly rejected.

IBCS argues that there was no misleading statement because (1) the marketing brochure made no claims about refunds in the event bond requirements were waived, which was what happened here; and (2) it was Mr. Congdon, as Persaud's agent, who transmitted the marketing brochure to Persaud which broke any causal connection between IBCS and Persaud's claimed loss. (Defs.' Mem. Opp'n Summ. J. at 8, 9.) As discussed, JMJV's decision to waive the bond requirement is irrelevant because it

also rejected the bonds. (Golia Dep. 101:4-9, Oct. 6, 2009; Pl.'s Mem. Supp. Summ. J. Ex. L.) As to the claim that Persaud was misled by its own agent, this argument is contradicted by the plain fact that IBCS disseminated the marketing brochure to the public by making it available on its website. (Golia Dep. 138:13, 134:2-19, Oct. 6, 2009.)

## 2. *Intent to Induce the Public*

IBCS disseminated the marketing brochure with intent to induce the public to purchase its bonds. The brochure was a written advertisement under §§ 18.2-216. There is no dispute it was used to provide members of the public looking to purchase surety bonds information about IBCS's services. (Golia Dep. 138:13, Oct. 6, 2009.) Specifically, IBCS hoped the public would buy IBCS bonds and but for this purpose IBCS would not have made its marketing brochure available on the World Wide Web. (Golia Dep. 134:2-135:8, Oct. 6, 2009.) Therefore, the element of intent to induce is satisfied.

## C. Count IV (punitive damages)

The Court grants summary judgment in favor of Defendants because despite misrepresentations concerning IBCS's refund policy, there is no proof Defendants acted with actual malice in disseminating the marketing brochure or based on Mr. Golia's representations. Punitive damages may be recovered in an action

22

for fraud where there is direct or circumstantial proof of
actual malice, which is shown by a conscious disregard of the
rights of others. *Jordan v. Sauve*, 247 S.E.2d 739, 741-42 (Va.
1978)(reversing the trial court's order denying plaintiff's
claim for punitive damages because defendant withheld documents
pertaining to the buyer's right to purchase the automobile). In
granting punitive damages, the court seeks not to compensate for
plaintiff's loss, but to punish the defendant and warn others of
his wrongdoing. *Id.* at 741.

While Defendants were aware that IBCS's refund policy was
not as it appeared in the marketing brochure, their conduct did
not amount to a reckless disregard of Persaud's rights. Persaud
sets forth two arguments why IBCS and Mr. Golia displayed a
conscious disregard of its rights. First, Mr. Golia was
reckless for not informing Persaud that IBCS's true refund
policy was contained in the GAI when he knew of Persaud's
concern about the refund policy. (Pl.'s Mem. Supp. Summ. J. at
22, 23.) Additionally, the fact that IBCS did not incur any
risk or provide any services tends to show a disregard for
Persaud's rights, and therefore IBCS should not be allowed to
retain the bond premium. (Pl.'s Mem. Supp. Summ. J. at 23, 24.)

Persaud's arguments are unconvincing. First, it is true
that in securing the GAI and bond premium, Mr. Golia made

representations contrary to the GAI's terms and directed Mr. Congdon to the marketing brochure rather than the GAI. (Pl.'s Mem. for Summ. J. ¶ 26; Defs.' Mem. Opp'n Summ. J. at 2; Ex. H to A. Persaud Decl. ¶ 22; Golia Admis. 20-22; IBCS Admis. 15.) However, IBCS also urged Persaud to pre-qualify the bonds in order to avoid a rejection from JMJV. (Defs.' Mem. Opp'n Summ. J. Ex. 3; Andy Persaud Decl. Ex. H at ¶ 22; Golia Admis. 20-22; IBCS Admis. 15.) It is more likely that malice would exist had Mr. Golia discouraged Persaud from getting pre-qualification, which was not the case. Mr. Golia's act of deflecting attention from the GAI's "FEES AND CHARGES" provision based on his representations, though dishonest, did not amount to a spirit of mischief or criminal indifference to Persaud's rights.

Second, that IBCS did not point out information in the GAI which was available to Persaud is not evidence of reckless disregard for Persaud's rights. The question here is whether sufficient evidence exists to permit the jury to find that IBCS acted with recklessness by dissemination and directing Persaud to its marketing brochure, along with Mr. Golia's representations, so as to evince a conscious disregard of Persaud's rights to learn of the true refund policy. On balance, the Court finds it does not. Unlike defendant car salesmen in *Sauve* who allegedly tampered with the sales order

24

and caused plaintiff car buyer to obtain financing at an
unauthorized amount, IBCS did not secretly change the GAI's
terms or concealed the relevant provisions. *Sauve,* 247 S.E.2d
at 740-41. Without more, reckless disregard cannot be
established by the mere fact that IBCS did not provide any
services to Persaud. Inaction alone does not amount to malice.
Therefore, even where all inferences are drawn in a light most
favorable to Persaud, there was no actual malice by Defendants
and Persaud may not recover punitive damages.

## IV. CONCLUSION

The Court grants summary judgment in favor of Persaud on
Count I (fraud in the inducement) because there are no genuine
issues of material fact as to whether IBCS misrepresented its
refund policy to Persaud to secure the GAI and bond premium.
The Court also grants summary judgment in favor of Persaud on
Count III (false advertising) because there are no genuine
issues of material fact as to whether IBCS, by its marketing
brochure, violated Virginia's false advertising statute.
Finally, the Court grants summary in favor of Defendants on
Count IV (punitive damages) because despite their
misrepresentation concerning IBCS's refund policy, there is
insufficient evidence to create a genuine issue for trial as to

whether Defendants acted with actual malice.  Accordingly, it is hereby

ORDERED that Plaintiff's Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART.  It is further

ORDERED that Defendants' Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART.

The Clerk is directed to ENTER JUDGMENT pursuant to Federal Rule of Civil Procedure 58.  The Court enters judgment in favor of Plaintiff Persaud Companies, Inc. and against Defendants IBCS Group, Inc., Edmund Scarborough, and Steven Golia in the amount of one hundred twenty-one thousand and five hundred fifty-seven dollars ($121,557.00).

The Clerk is directed to forward a copy of the Memorandum Opinion to counsel.

Entered this _____ day of April, 2010.

/s/
Gerald Bruce Lee
United States District Judge

Alexandria, Virginia

26